Jessie Joseph TAFERO, Petitioner,

v.

Richard L. DUGGER, Respondent.

No. 88–6156–CIV.

United States District Court,
S.D. Florida.

March 5, 1988.

Bruce Rogow, Fort Lauderdale, Fla., for petitioner.

Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, Fla., for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

NESBITT, District Judge.

This cause is before the Court upon Jessie Joseph Tafero's Petition for Writ of Habeas Corpus, and his Emergency Motion for Stay of Execution, both filed on March 3, 1988. For the reasons set forth below, the Petition for Writ of Habeas Corpus is denied.

### Background

On May 18, 1976 a Broward County jury convicted Tafero of two counts of first-degree murder, and rendered an advisory opinion recommending that he be sentenced to death for each homicide. The trial judge accepted the jury's recommendation. The present petition is but the latest of many avenues of review Tafero has pursued during the almost twelve years since his death sentence. In 1981, the Florida Supreme Court denied his direct appeal from his conviction and sentence, *Tafero v. State,* 403 So.2d 355 (Fla.1981), *cert. denied,* 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 694 (1982), and in 1983, denied his motion for leave to file a petition for writ of error *coram nobis. Tafero v. State,* 440 So.2d 350 (Fla.1983), *cert. denied,* 465 U.S. 1084, 104 S.Ct. 1456, 79 L.Ed.2d 773 (1984). On November 2, 1984, eight years after Tafero's conviction, the governor of Florida signed the first death warrant in this case. Tafero immediately filed a motion for post-conviction relief in state court ("rule 3.850 motion"), which was denied; the Florida Supreme Court affirmed the order in 1984 and denied a stay of execution. *Tafero v. State,* 459 So.2d 1034 (Fla.1984). Tafero then filed his first petition for writ of habeas corpus with this Court in November 1984; the United States Court of Appeals for the Eleventh Circuit granted a stay of execution but ultimately affirmed this Court's denial of the petition. *Tafero v. Wainwright,* 796 F.2d 1314 (11th Cir.1986),

*cert. denied,* — U.S. —, 107 S.Ct. 3277, 97 L.Ed.2d 782 (1987). In December 1986, Tafero's second rule 3.850 motion was denied as an abuse of procedure; that ruling was affirmed by the Florida Supreme Court a year later. *Tafero v. State,* — So.2d —, 13 F.L.W. 8 (Fla. Dec. 23, 1987).

The governor of Florida signed a second death warrant on Tafero on January 27, 1988. After the Florida Supreme Court denied an original petition for writ of habeas corpus, Tafero filed his second habeas petition with this Court on March 3, 1988. The death warrant expires on March 15, 1988, and Tafero's execution is scheduled for March 9 at 7:00 a.m.

In his second habeas petition, Tafero presents three claims alleging violations of his constitutional rights during the sentencing phase of his trial. He argues that he is entitled to a resentencing hearing because: (1) the advisory jury and the judge were precluded from considering non-statutory mitigating factors in sentencing in violation of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and *Hitchcock v. Dugger,* — U.S. —, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987) ("the *Hitchcock* claim"); (2) statements made by the prosecutor and the judge impermissibly minimized the jury's sense of responsibility in determining whether to recommend the death penalty, in violation of *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) ("the *Caldwell* claim"); and (3) he received ineffective assistance of counsel during sentencing.

Because of the gravity of the situation, Tafero has moved for a stay of execution pending this Court's determination of the issues presented in his petition. The Court has considered the complexity of the legal issues presented, and has reviewed the entire record of this case for the second time. After due consideration, and having heard oral argument, the Court hereby denies the motion for stay of execution. For the reasons set forth below, the Court denies the second petition for writ of habeas corpus.

### Procedural Bars

■ Respondent Richard L. Dugger, on behalf of the State of Florida ("the State")

argues that the Court is precluded from considering any of the three claims in Tafero's petition because the claims are procedurally barred. The State argues both that the petition should be dismissed as an impermissible successive habeas writ, and that the claims are barred by the state-law doctrine of procedural default. Although the State's brief addresses the question of procedural default under Florida law in regard to the *Hitchcock* and *Caldwell* claims, counsel for the State represented at oral argument that they withdrew that argument as to the *Hitchcock* claim. It is unclear whether the State continues to argue that the doctrine of procedural default applies to Tafero's claim under *Caldwell;* however, the Court finds that *Caldwell* represented a sufficiently significant change in the law to satisfy the cause and prejudice requirements of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See Adams v. Wainwright*, 804 F.2d 1526 (11th Cir.1986). Therefore, the Court holds that the doctrine of procedural default presents no obstacle to consideration of the *Hitchcock* or *Caldwell* claims.

The State's other procedural argument is based on the fact that this is Tafero's second petition for writ of habeas corpus. Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts controls successive petitions. The rule provides:

A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

28 U.S.C. foll. § 2254 (1982). Clearly, the rule distinguishes between two types of successive petitions: those that attempt to relitigate claims already decided on the merits, and those that allege new grounds that should have been raised in a previous petition. *See Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616 n. 6, 91 L.Ed.2d 364 (1986). The State objects to Tafero's

*Hitchcock* claim and claim of ineffective assistance of counsel as previously raised and decided on the merits; the State objects to the *Caldwell* claim as an abuse of the writ.

The United States Supreme Court has noted that "the Advisory Committee Note to Rule 9(b) ... states that federal courts should entertain successive petitions only in 'rare instances.'" *Kuhlman*, 106 S.Ct. at 2626 (plurality opinion). The Supreme Court concluded that "the 'ends of justice' require federal courts to entertain such petitions only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence." *Id.* at 2627. Because Tafero's claims arise from the sentencing phase rather than the guilt phase of his trial, the requirement that he make "a colorable showing of factual innocence" seems inapposite. The Eleventh Circuit has stated, "Some adjustment is required to apply this test, phrased as it is in terms of 'innocence,' to alleged constitutional errors in capital sentencing." *Moore v. Kemp*, 824 F.2d 847, 856 (11th Cir.1987), *petition for cert. filed*, 56 U.S.L.W. —— (Jan. 27, 1988). The *Moore* court concluded that the appropriate consideration is "whether the alleged constitutional error either precluded the development of true facts or resulted in the admission of false ones." *Id.* at 857 (quoting *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986)).

■ Applying this standard to Tafero's claim of ineffective assistance of counsel, the Court finds that the ends of justice do not require relitigation of its merits. Tafero attempts to recast his ineffective assistance claim in a new light because he now alleges *Hitchcock* error, but the substance of his claim remains the same. The effectiveness of Robert McCain, Tafero's trial counsel, has already been determined both by this court and by the Eleventh Circuit. Tafero has not made a colorable showing that, even in light of *Hitchcock,* the alleged ineffective assistance of counsel precluded the development of true facts. For this reason, the Court declines to consider the

ineffective assistance of counsel claim raised in the successive petition.

■ Applying the "ends of justice" standard to the *Hitchcock* claim itself, the Court finds that Tafero has made a colorable showing that the *Hitchcock* violation might have precluded the development of true facts in the sentencing phase of the trial. The State points out that Tafero has already advanced a claim based on *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion), and that the claim was rejected by the Eleventh Circuit. *Tafero v. Wainwright,* 796 F.2d 1314 (11th Cir.1986). Tafero argues, however, that *Hitchcock* establishes a *per se* rule for all pre-*Lockett* capital sentencings under Florida law; that is, *Hitchcock* requires automatic reversal of all such sentencings. Although the Court declines to adopt such a broad reading of *Hitchcock,* it is apparent that *Hitchcock* mandates reconsideration of the merits of Tafero's claim.

■ Turning next to the *Caldwell* claim, the State contends that the claim should be barred under the second part of Rule 9(b), the so-called "abuse of the writ" doctrine. The abuse of the writ doctrine has its roots in the equitable nature of the writ of habeas corpus, *Sanders v. United States,* 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963), and prevents a petitioner from raising a claim in a successive writ that should have been raised previously. The Eleventh Circuit has stated, "An evaluation of a petitioner's conduct in omitting a claim from his first petition necessarily hinges on the petitioner's awareness of the factual and legal bases of the claim when the first petititon was filed." *Moore v. Kemp,* 824 F.2d 847, 851 (11th Cir.1987). In this case, *Caldwell v. Mississippi* was not decided until after this Court denied the first habeas petition. The State admits that *Caldwell* represents a change in the law, but argues that Tafero had the "legal tools" to construct a *Caldwell*-type claim when he filed his first petition because the United States Supreme Court had granted certiorari in *Caldwell* six weeks before the petition was filed. *See Caldwell v. Mississip-*

*pi,* 469 U.S. 879, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984). Although the State is technically correct, this Court finds it inappropriate to preclude a petitioner from bringing a significant constitutional claim for this meager reason alone. *See also Adams v. Wainwright,* 804 F.2d 1526, 1530–31, n. 5 (11th Cir.1986) (before decision in *Caldwell,* only other Supreme Court case on point was *California v. Ramos,* 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983), which seemed to sanction statements made at petitioner's trial).

Therefore, for the reasons stated above, the Court holds that Tafero's *Hitchcock* and *Caldwell* claims are not procedurally barred. The Court will address the merits of each claim separately.

### *The Hitchcock Claim*

Tafero argues that there exist non-statutory mitigating circumstances which should have been presented and considered during the sentencing proceeding. The United States Supreme Court has held that "the sentencer may not refuse to consider or be precluded from considering 'any relevant mitigating evidence.'" *Hitchcock v. Dugger,* — U.S. —, 107 S.Ct. 1821, 1822, 95 L.Ed.2d 347 (1987) (quoting *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1 (1986); citing *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed. 2d 973 (1978)). The sole inquiry necessary to determine whether a violation of *Hitchcock* occurred is whether the judge refused to consider, or precluded the jury from considering, non-statutory mitigating factors at the sentencing proceedings. *See id.* 107 S.Ct. at 1823.

In this case both events occurred. Before the sentencing proceedings began, the trial court told the jurors that, "At the conclusion of the taking of the evidence, and after argument of counsel, you will be instructed on the factors in aggravation and mitigation that you may consider." AA at 46.[1] Subsequently, after reading the aggravating statutory list, the trial court instructed the jurors on the statutory

---

1. References to the Addendum on Appeal will be designated by "AA."

mitigating factors only, stating, "The mitigating circumstances which you may consider, if established by the evidence are these: [statutory list]." [2] *Id.* at 56. These instructions are virtually identical to those in *Hitchcock.* 107 S.Ct. at 1824; *see also Hargrave v. Dugger*, 832 F.2d 1528, 1533 (11th Cir.1987) ("The outcome of a pre-*Lockett* case concerning a *Lockett* claim should be determined by matching the record in the case under consideration with the *Hitchcock* record."). Accordingly, the instructions given by the trial court violate *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

The issue which then arises is whether this error is one that affects the substantial rights of Tafero. Before a court can find that any federal constitutional error harmless, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. State of California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

The Eleventh Circuit has applied the harmless error analysis to *Hitchcock* infirmities.[3] *Clark v. Dugger*, 834 F.2d 1561, 1569–70 (11th Cir.1987), *petition for cert. filed*, 56 U.S.L.W. —— (Feb. 4, 1988). The Florida Supreme Court has done the same. *Ford v. State*, 522 So.2d 345, 13 F.L.W. 150 (Fla. Feb. 18, 1988); *White v. Dugger*, 523 So.2d 140, 13 F.L.W. 59 (Fla.1988); *Mikenas v. Dugger*, 519 So.2d 601 (Fla. Jan. 21, 1988); *Booker v. Dugger*, 520 So.2d 246, (Fla.1988); *Riley v. Wainwright*, 517 So.2d 656 (Fla.1987); *Delap v. Dugger*, 513 So.2d 659, 662 (Fla.1987), *cert. of probable cause as to Hitchcock claim granted*, 832 F.2d 1233 (11th Cir.1987) (construing *Hitchcock* as acknowledging that "its reasoning was subject to the harmless error analysis").

Tafero proposes four non-statutory mitigating factors which should have been con-sidered during the sentencing proceedings: (1) evidence was presented during the guilt phase of the trial questioning whether Tafero was the actual shooter; (2) the jury may have had residual doubts regarding Tafero's guilt; (3) disparate treatment of a co-defendant who received a life sentence; and (4) the fact that Tafero is the father of two children.

The Florida Supreme Court has explicitly found that there were no residual doubts and that the evidence demonstrated that Tafero did the shooting.

> [T]he evidence against him is overwhelming. In addition to the eyewitness testimony, bullets removed from the victims match the gun in Tafero's possession at his arrest. We do not accept Tafero's contention that Rhodes' testimony was unbelievable in that Rhodes actually did the shooting. Rhodes' testimony is corroborated by both the physical evidence and the other eyewitnesses' testimony. Additionally, both truck drivers noticed Rhodes' hands in the air when the first shots were fired. The evidence shows beyond a reasonable doubt that Tafero is guilty of the premeditated murder of both Irwin and Black.

*Tafero v. State*, 403 So.2d at 359; *see Tafero v. State*, 459 So.2d at 1036; *Tafero v. Wainwright*, 798 F.2d at 1318.

Tafero's argument regarding the co-defendant's disparate treatment is similarly without merit because it rests upon the assertion that the co-defendant Rhodes was the shooter. While a jury can base a recommendation of life imprisonment upon the mitigating factor of "disparate treatment of others *who are equally or more culpable* in the murder," *DuBoise v. State*, 12 F.L.W. 107, 109 (Fla. Feb. 19, 1987), *mod'd on reh'g*, 520 So.2d 260, 13 F.L.W. 79 (Fla.1988) (emphasis added); *see Brookings v. State*, 495 So.2d 135 (Fla.

---

**2.** The prosecutor reinforced these restrictions, stating that, "I will go over with you, eight aggravating circumstances, six of those eight aggravating circumstances are present in this case." *Id.* at 48.

**3.** *Hitchcock* did not specifically decide whether the harmless error analysis could be applied.

*Hitchcock*, 107 S.Ct. at 1824 ("Respondent has made no attempt to argue that this error was harmless, or that it had no effect on the jury or the sentencing judge. In the absence of such showing our cases hold that the excusion of mitigating evidence of the sort at issue here renders the death sentence invalid.").

1986); *McCampbell v. State,* 421 So.2d 1072 (Fla.1982), it has been determined that Tafero was the shooter. *Tafero,* 403 So.2d at 359.

Finally, the failure to consider Tafero's status as a father is not a circumstance which can, in any manner, create error sufficient to warrant a new sentencing hearing. While in some cases this factor has significance, *see, e.g., Jacobs v. State,* 396 So.2d 713 (Fla.1981), it has minimal relevance in Tafero's case.

In contrast to the insubstantial mitigating factors proposed by Petitioner, four aggravating factors existed to warrant the sentence imposed:

1. Both murders were committed by the Defendant while he was on parole and while he was actually a fugitive from justice.

2. The Defendant does have a significant history of prior criminal activity involving the use or threat of violence to the person of another. * * *

4. The Murders were committed by MR. TAFERO for the purpose of avoiding or preventing lawful arrest or effecting an escape from custody. * * *

5. The Murders were committed to hinder the lawful enforcement of the laws of this State. The victims of these murders, two law enforcement officers, were attempting to enforce the laws of this State after discovering various firearms and various types of drugs and controlled substances in the automobile in which the Defendant was a passenger.

*Tafero v. State,* 403 So.2d at 362.

■ The mitigating circumstances in no manner ameliorate the enormity of Tafero's guilt. Accordingly, although there was *Lockett* error found in this case, the error is harmless inasmuch as it was harmless beyond a reasonable doubt. *Tafero v. Wainwright,* 796 F.2d at 1320 ("Because Tafero presented weak mitigating evidence and because of the overwhelming evidence of the aggravating circumstances surrounding the murders, we are convinced that no reasonable probability existed that the jury would have reached a different result had Tafero's counsel presented the mitigating evidence which was available, or had he presented a stronger closing argument.").

### The Caldwell Claim

Tafero claims that two statements by the prosecutor and several statements by the trial judge conveyed a false impression to the sentencing jury as to its critical role in the sentencing process in violation of *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). In *Caldwell,* the Supreme Court found that the sentencing jury had been misled regarding its critical role in a capital case, and vacated the sentence of death.

The claimed *Caldwell* error in this case arose from statements made by the prosecutor to the jury during voir dire that after the first phase of the trial the jury would render an advisory opinion "as to life or death, and the Judge will determine what he has to do," (Vol VII, at 68–69) and that "even if you don't believe in capital punishment, his Honor, Judge Futch, is the final determiner." (Vol. VIII at 247). The trial court made similar statements during the trial. In particular, during voir dire before the trial began, the court told the jury:

This is just an advisory sentence, and that is not binding upon the Court.

The Court can accept your advisory sentence, if it so desires; or the Court can refuse to accept your advisory sentence, because the last word as to the sentence is right here. Do you understand that?

Vol. VIII at 293. Other statements were made during trial by the court regarding the respective functions of the court and jury and their roles in sentencing. (Vol. VIII at 294, 295, AA at 45–47, 54).

Before the State began its case in the sentencing phase the court informed the jurors as follows:

Ladies and gentlemen of the jury, you have found the defendant guilty of Murder in the First Degree as alleged in Count I of the Indictment, and guilty of Murder in the First Degree as alleged in Count II of the Indictment.

As I told you, the punishment for this crime is either death, or life imprisonment.

The final decision as to what punishment shall be imposed rests *solely with the Judge of this Court.* However the law requires that you, the jury, render to the Court an advisory sentence as to what punishment should be imposed upon the defendant.

AA at 45 (emphasis added). It is urged that these statements made throughout important phases of the case, particularly the sentencing phase, the jury was misled regarding the critical nature of its role in violation of *Caldwell. See Adams v. Wainwright*, 804 F.2d 1526 (11th Cir.1986), *mod'd*, 816 F.2d 1493, *petition for cert. filed*, 56 U.S.L.W. 3094 (July 20, 1987) (application of *Caldwell* to statements made to Florida jury considering the death penalty).

■ The Court has examined the statements of the prosecutor and the trial judge to determine whether they presented the "intolerable danger" that the jury chose to minimize the importance of its role in recommending the death sentence. *Caldwell*, 105 S.Ct. at 2642. After reviewing the voir dire and the challenged instructions in their entirety, as is proper under *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), the Court concludes that the state record here does not support a *Caldwell* claim. The Court finds that the facts and statements made in *Caldwell* as well as the applicable state laws differ from those made in Tafero's case.

In *Caldwell* the prosecutor told the jurors in his final argument that the decision rendered as to the sentence of death was "automatically reviewable by the Supreme Court." Under the Mississippi death penalty procedure then in effect, the jury made the final determination of whether to impose the sentence of life or death. The sentence was not "advisory" nor could it be overturned by the trial judge; it was subject to review only by the Supreme Court of Mississippi.

The challenged judicial and prosecutorial comments in this record lead the court to conclude that the jury was not misled as to the importance of its role. Rather, the statements essentially explained the respective function of the judge and the jury under the Florida death penalty statute. *See* Fla.Stat. § 921.141. During voir dire the court told the jury it was their duty to determine guilt or innocence, and thereafter to render an advisory sentence as to life imprisonment or death, the court "not being required to follow the advice of the jury." Following this statement the court added:

However because *such a verdict could lead to a sentence of death* your qualifications to serve as a juror in this case depend upon your attitude toward rendering a verdict that could result in the death penalty.

Vol. VII, at 14 (emphasis added).

The emphasized language was similarly repeated by the court (Vol. VII at 15, Vol. VIII at 293, 294) and by the prosecutor (Vol. VII at 48, 69) during the remaining portions of the voir dire. At the end of the guilt phase of the trial, the court stated:

The maximum penalty for Murder in the First Degree is death. In the event you find the defendant guilty of Murder in the First Degree, there will be a separate proceeding for you to hear evidence and return an advisory opinion to the Court as to whether the death penalty or life imprisonment should be imposed upon the defendant. Your opinion in this event is advisory only, with the ultimate responsibility resting upon the Court.

AA at 29.

After the evidence was presented at the sentencing phase, the court instructed the jury as follows:

CHARGE TO THE JURY: Ladies and gentlemen of the jury, it is now your duty to advise the Court as to what punishment should be imposed upon the defendant for his crimes of Murder in the First Degree as to Count I and Count II of the Indictment.

As you have been told, the final decision as to what punishment shall be imposed is the responsibility of the Judge. However, it is your duty to follow the law

which will now be given to you by the Court, and render to the Court an advisory sentence based upon your determination as to whether sufficient aggravating circumstances exist to justify the imposition of the death penalty, and whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist.

AA at 54. The court then told the jurors their recommendation should be based upon a weighing of the mitigating and aggravating circumstances in the case. The jury was instructed that their recommendation should be based upon the evidence and the law given by the Court. AA at 54–59.

The statements correctly explained the advisory jury process and the bifurcated proceedings under Florida death penalty statute and emphasized the jury's responsibility. It is difficult for this Court to apply the *Caldwell* rule to the proper statements of the law made by the judge and the prosecutor regarding the procedural structure established by the Florida death penalty statutes which accepts Florida jury role as "advisory," and which has been upheld against constitutional challenge. *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984).[4] The statements by the court in this record in substance tracked the language of the Florida death penalty statute. Nothing was said that would be reasonably interpreted as dissuading the jury from the significance of their function or that the jury's role and responsibility was in any less important or serious because of the decision was only an advisory recommendation.

In *Adams v. Wainwright*, 804 F.2d 1526, a *Caldwell* error occurred because the trial court's repeated misleading statements were made to placate and assure the jurors, and led them to believe that the moral responsibility rested only upon the trial court's conscience. The Eleventh Circuit concluded that the statements diminished the jury's sense of responsibility for the sentencing process:

[T]he judge clearly told the jurors that he was the one assigned this decision and that the jurors should not worry about the "conscience part of it." Indeed, because it was the trial judge who made the misleading statements in this case, representing them to be an accurate description of the jury's responsibility, the jury was even more likely to have believed that its recommended sentence would have no effect and to have minimized its role than the jury in *Caldwell*.

*Adams*, 804 F.2d at 1532. The statements made by the prosecutor and court in Tafero's case were explanatory and were a correct statement of Florida law as to the function and role of the advisory jury under Florida's death penalty. They were not, as in *Adams*, erroneous comments and misstatements of Florida law given on some nine separate occasions.

In the instant case, none of the challenged statements would have caused the Tafero jury to abdicate or minimize the importance of its role.

An example of the emphasis upon the seriousness of the jury's role is this statement by the trial judge as follows:

The fact that the determination of whether or not a majority of you recommend a sentence of death, or a sentence of life imprisonment, in this case can be reached by a single ballot and *should not influence you to act hastily or without due regard to the gravity of these proceedings.*

Before you ballot, you should carefully weigh, sift and consider the evidence, and all of it, *realizing that human life is at stake*, and bring to bear your best jugment upon the sole issue which is submitted to you at this time: Whether a majority of your number recommend that the defendant be sentenced to death or to life imprisonment.

AA at 58 (emphasis added).

There is no indication in this record that the jury returned the recommendation of death on any basis other than the evidence adduced, or that the jury was led to believe

---

4. In *Spaziano* the United States Supreme Court made reference regarding the jury's recommen-

dation being entitled to some defense by the trial court. 104 S.Ct. at 3165–3166.

anything but the full weight and seriousness of its advisory responsibility. The jury's advisory role was properly communicated to them. As a result Petitioner's *Caldwell* claim must fail.

### Conclusion

The Court has carefully considered all of the claims proffered by Tafero, and has explored the entire record in this case at length. The Court concludes from its review of the evidence, and from the arguments presented at the hearing on March 4, 1988, that the claims Tafero seeks to advance are without merit.

For all of the reasons discussed at length above, it is hereby

ORDERED AND ADJUDGED that Petitioner Jessie Joseph Tafero's Petition for Writ of Habeas Corpus is DENIED.

### ORDER

This cause is before the Court upon Petitioner's Motion For a Stay of Execution presently scheduled for 7:00 a.m., Wednesday, March 9, 1988, as well as an application for certificate of probable cause and certificate to appeal in forma pauperis, it is hereby

ORDERED that Petitioner's application for a certificate of probable cause is DENIED, and this cause is dismissed.

IT IS FURTHER ORDERED that Petitioner's Motion For a Stay of Execution is DENIED except to the limited extent of allowing Petitioner to appeal to the Court of Appeals for the Eleventh Circuit by 4:00 p.m., Monday, March 7, 1988.

IT IS FURTHER ORDERED that Petitioner is GRANTED leave to appeal in forma pauperis.