Larry Eugene MANN,
Petitioner-Appellant,

v.

Richard L. DUGGER, Secretary, Florida
Department of Corrections,
Respondent-Appellee.

No. 86–3182.

United States Court of Appeals,
Eleventh Circuit.

April 21, 1988.

Larry H. Spalding, Billy H. Nolas, Tallahassee, Fla., Talbot D'Alemberte, The Florida State University College of Law, Tallahassee, Fla., for petitioner-appellant.

Michael Kotler, Gary Welch, Asst. Attys. Gen., Tampa, Fla., for respondent-appellee.

Before RONEY, Chief Judge, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HATCHETT, ANDERSON, CLARK, and EDMONDSON, Circuit Judges.

TJOFLAT, Circuit Judge:

## I.

Petitioner, Larry Eugene Mann, is a Florida death row inmate. In 1981, petitioner was convicted of first degree murder and kidnapping.[1] At the conclusion of the sentencing phase of petitioner's trial, the jury recommended the death penalty. The trial judge followed the recommendation and entered a sentence of death.

On direct appeal, the Supreme Court of Florida affirmed the conviction but vacated the sentence and ordered a new sentencing proceeding without a jury.[2] *Mann v. State*, 420 So.2d 578 (Fla.1982). The trial court reimposed the death penalty, and, on direct appeal from the resentencing, the supreme court affirmed. *Mann v. State*, 453 So.2d 784 (Fla.1984), *cert. denied*, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985). Petitioner thereafter moved the trial court to vacate the judgment and sentence pursuant to Fla.R.Crim.P. 3.850. He also petitioned the supreme court for writ of habeas corpus. The trial court denied the Rule 3.850 motion, and the supreme court affirmed, at the same time denying petitioner's request for habeas relief. *Mann v. State*, 482 So.2d 1360 (Fla.1986).

Petitioner then instituted this habeas corpus action in the district court. In his petition, he attacked his conviction and sentence on several grounds. As one ground for attacking the sentence, petitioner contended that he was entitled to resentencing under *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), because the prosecutor and trial judge had made comments that had likely diminished the sentencing jury's sense of responsibility with respect to its role in the sentencing process.[3] The district court de-

1. Petitioner's criminal conduct is described in *Mann v. State*, 420 So.2d 578 (Fla.1982).

2. The operation of the Florida capital sentencing scheme is explained in part II. *See supra* note 5 and accompanying text. Here, on petitioner's direct appeal, the Supreme Court of Florida held that the trial judge had improperly found two aggravating circumstances under Fla. Stat. § 921.141(5) and had failed to specify with sufficient clarity his conclusions regarding mitigating factors, as required by Fla.Stat. § 921.141(6). *Mann v. State*, 420 So.2d 578, 581 (Fla.1982). Accordingly, the supreme court ordered resentencing by the trial judge. Because the errors identified by the supreme court pertained only to the trial judge's findings, and not to defects before the sentencing jury, resentencing before a new jury was not deemed necessary.

3. Petitioner has already had one resentencing, pursuant to an order by the Supreme Court of Florida. *See supra* note 2 and accompanying text. That resentencing was accomplished without empaneling a new jury; in resentencing petitioner, therefore, the trial court used the recommendation of the original sentencing jury. That being the case, we must examine the original jury sentencing proceeding in determining

nied relief on all grounds. We reverse and hold that petitioner is entitled to relief on the *Caldwell* claim.[4] We accordingly order the district court to grant the writ setting aside petitioner's death sentence unless the state provides petitioner a new sentencing proceeding before a newly empaneled jury.

## II.

*Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), is best understood in the context of its facts. The case involved a challenge to a death sentence imposed pursuant to the Mississippi capital sentencing scheme. Mississippi affords capital defendants a bifurcated trial. After the jury renders a verdict of guilty, the trial court convenes a sentencing proceeding before the same jury. The jury then renders a verdict of either death or life imprisonment, and the trial court enters a sentence in accordance with the jury's verdict. If the jury renders a verdict of death, the sentence is automatically reviewed by the Supreme Court of Mississippi. Miss.Code Ann. § 99–19–105; *Jackson v. State,* 337 So.2d 1242, 1255 (Miss.1976). In conducting its review, that court applies a presumption of correctness to the sentencing jury's verdict. *Caldwell v. State,* 443 So.2d 806, 816 (Miss.1983) (Lee, J., dissenting). Under Mississippi law, the supreme court may overturn a death sentence in three situations only: (1) where the sentencing jury's verdict was so arbitrary as to be "against the overwhelming weight of the evidence," *Williams v. State,* 445 So.2d

798, 811 (Miss.1984), *cert. denied,* 469 U.S. 1117, 105 S.Ct. 803, 83 L.Ed.2d 795 (1985); (2) where the evidence of statutory aggravating circumstances, required for the imposition of the death penalty, was so lacking that a "judge should have entered a judgment of acquittal notwithstanding the verdict," *id.;* or (3) where the sentence is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *Id.*

In *Caldwell,* the petitioner, Bobby Caldwell, contended that his death sentence was invalid under the eighth amendment because the sentencing jurors had been led to believe that the responsibility for determining the sentence rested not with them but with the appellate court that would later review the case. The facts supporting the claim were as follows. In closing argument before the sentencing jury, defense counsel entreated the jurors to show mercy and remarked that "[y]ou are the judges and you will have to decide [Caldwell's] fate. It is an awesome responsibility, I know—an awesome responsibility." *Caldwell,* 472 U.S. at 324, 105 S.Ct. at 2637. The prosecutor then sought to downplay the effect of counsel's argument by telling the jurors that "your decision is not the final decision ... [y]our job is reviewable." *Id.* at 325, 105 S.Ct. at 2637. Defense counsel objected to this statement, but the trial court overruled the objection, commenting that "it [is] proper that the jury realizes that it is reviewable automatically

---

whether petitioner's sentence is valid under the eighth amendment.

**4.** We affirm the district court's disposition of the remaining claims. Those claims are described in the panel opinion. *See Mann v. Dugger,* 817 F.2d 1471 (11th Cir.), *vacated,* 828 F.2d 1498 (11th Cir.1987).

The attorney general argues that petitioner's *Caldwell* claim is barred by procedural default because petitioner failed to raise the claim on direct appeal of his conviction and sentence. We find that the claim is not procedurally barred. Although petitioner failed to raise the claim on direct appeal, he did raise it in his Rule 3.850 motion. The circuit court denied that motion and petitioner appealed to the Supreme Court of Florida. In disposing of the appeal, the supreme court stated that its review of the record "clearly and conclusively refute[d]

*any claim* that there was any constitutional infirmity in the trial." *Mann v. State,* 482 So.2d 1360, 1362 (Fla.1986) (emphasis added). We interpret this statement as indicating that the supreme court considered the merits of each claim in petitioner's Rule 3.850 motion, including the *Caldwell* claim. Since the Supreme Court of Florida therefore chose not to enforce its own procedural default rule, federal habeas review of the claim is not barred. *See Oliver v. Wainwright,* 795 F.2d 1524, 1528–29 (11th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1380, 94 L.Ed.2d 694 (1987); *Campbell v. Wainwright,* 738 F.2d 1573, 1576–77 (11th Cir.1984), *cert. denied,* 475 U.S. 1126, 106 S.Ct. 1652, 90 L.Ed.2d 195 (1986); *Rogers v. McMullen,* 673 F.2d 1185, 1188 (11th Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 740, 74 L.Ed.2d 961 (1983).

as the death penalty commands." *Id.*, 105 S.Ct. at 2638.

The United States Supreme Court held that Caldwell's sentence was invalid under the eighth amendment because it rested on "a determination made by a sentencer who ha[d] been led to believe that the responsibility for determining the appropriateness of the defendant's death rest[ed] elsewhere." *Id.* at 328–29, 105 S.Ct. at 2639. The Court reasoned that the eighth amendment's need for reliability in capital sentencing required that capital sentencers "view their task as a serious one of determining whether a specific human being should die at the hands of the State." *Id.* at 329, 105 S.Ct. at 2640. The jurors, having been told that their decision was "automatically reviewable," were misled into believing that their judgment call on the evidence would be reviewed de novo. Thus,

because the jury's sense of responsibility had likely been diminished as a result of the comments by the prosecutor and the court, the sentencing decision did not meet the standard of reliability required by the eighth amendment. *Id.* at 341, 105 S.Ct. at 2646.

In the present case, the attorney general argues that *Caldwell* is inapplicable because the Florida sentencing jury, unlike the Mississippi sentencing jury, is not the actual sentencer under the state capital punishment scheme. Under the Florida statutory scheme, the jury weighs the evidence of aggravating and mitigating circumstances presented during the sentencing phase of the defendant's trial, and then makes a recommendation of either life imprisonment or death. Fla.Stat. § 921.141(2) (1985).[5] That recommendation, the attor-

5. Section 921.141 provides:

(1) Separate proceedings on issue of penalty.—Upon conviction or adjudication of guilt of a defendant of a capital felony, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment.... The proceeding shall be conducted by the trial judge before the trial jury as soon as practicable.... In the proceeding, evidence may be presented as to any matter that the court deems relevant to the nature of the crime and the character of the defendant and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (5) and (6)....

(2) Advisory sentence by the jury.—After hearing all the evidence, the jury shall deliberate and render an advisory sentence to the court, based upon the following matters:

(a) Whether sufficient aggravating circumstances exist as enumerated in subsection (5);

(b) Whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist; and

(c) Based on these considerations, whether the defendant should be sentenced to life imprisonment or death.

(3) Findings in support of sentence of death.—Notwithstanding the recommendation of a majority of the jury, the court, after weighing the aggravating and mitigating circumstances, shall enter a sentence of life imprisonment or death, but if the court imposes a sentence of death, it shall set forth in writing its findings upon which the sentence of death is based as to the facts:

(a) That sufficient aggravating circumstances exist as enumerated in subsection (5), and

(b) That there are insufficient mitigating circumstances to outweigh the aggravating circumstances.

....

(4) Review of judgment and sentence.—The judgment of conviction and sentence of death shall be subject to automatic review by the Supreme Court of Florida....

(5) Aggravating circumstances.—Aggravating circumstances shall be limited to the following:

(a) The capital felony was committed by a person under sentence of imprisonment.

(b) The defendant was previously convicted of another felony or of a felony involving the use or threat of violence to the person.

(c) The defendant knowingly created a great risk of death to many persons.

(d) The capital felony was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery, sexual battery, arson, burglary, kidnapping, or aircraft piracy or the unlawful throwing, placing, or discharging of a destructive device or bomb.

(e) The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.

(f) The capital felony was committed for pecuniary gain.

(g) The capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.

(h) The capital felony was especially heinous, atrocious, or cruel.

(i) The capital felony was a homicide and was committed in a cold, calculated, and

ney general asserts, is always subject to rejection by the trial judge, who must under Fla.Stat. § 921.141(3) independently weigh the aggravating and mitigating circumstances before entering a sentence. Because the trial judge plays this role in sentencing, the attorney general argues, *Caldwell* error does not occur when the jury is told that sentencing responsibility lies elsewhere.

At first blush, the attorney general's argument has some appeal. It is true that the trial court independently weighs the aggravating and mitigating circumstances and actually enters the sentence. It is also true that the statute describes the sentencing jury's function as that of "render[ing] an advisory opinion to the court." The legislature's use of the term "advisory," considered in a vacuum, could be viewed as evincing a legislative intent that the sentencing jury play a role which, in the final analysis, is in fact largely meaningless. In common parlance, we often associate the term "advisory" with the term "nonbinding"; "advice," in the minds of most people, is something that a decisionmaker may follow or reject as he or she sees fit. In analyzing the role of the jury, however, we cannot operate in a vacuum. Rather, we must look to how the Supreme Court of Florida, the final interpreter of the death penalty statute, has characterized that role.

### A.

A review of the case law shows that the Supreme Court of Florida has interpreted section 921.141 as evincing a legislative intent that the sentencing jury play a significant role in the Florida capital sentencing scheme. *See Messer v. State,* 330 So.2d 137, 142 (Fla.1976) ("[T]he legislative intent that can be gleaned from Section 921.141 [indicates that the legislature] sought to devise a scheme of checks and balances in which the input of the jury serves as an integral part."); *see also Riley v. Wainwright,* 517 So.2d 656, 657 (Fla.1987) ("This Court has long held that a Florida capital sentencing jury's recommendation is an integral part of the death sentencing process."); *Lamadline v. State,* 303 So.2d 17, 20 (Fla.1974) (right to sentencing jury is "an essential right of the defendant under our death penalty legislation"). In the supreme court's view, the legislature created a role in the capital sentencing process for a jury because the jury is "the one institution in the system of Anglo-American jurisprudence most honored for fair determinations of questions decided by balancing opposing factors." *Cooper v. State,* 336 So. 2d 1133, 1140 (Fla.1976), *cert. denied,* 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977); *see also McCampbell v. State,* 421 So.2d 1072, 1075 (Fla.1982) (the jury's recommendation "represent[s] the judgment of the community as to whether the death sentence is appropriate"); *Chambers v. State,* 339 So.2d 204, 209 (Fla.1976) (England, J., concurring) (the sentencing jury "has been assigned by history and statute the responsibility to discern truth and mete out justice").

To give effect to the legislature's intent that the sentencing jury play a significant role, the Supreme Court of Florida has severely limited the trial judge's authority to override a jury recommendation of life imprisonment. In *Tedder v. State,* 322 So.

---

premeditated manner without any pretense of moral or legal justification.

(6) Mitigating circumstances.—Mitigating circumstances shall be the following:

(a) The defendant has no significant history of prior criminal activity.

(b) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance.

(c) The victim was a participant in the defendant's conduct or consented to the act.

(d) The defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor.

(e) The defendant acted under extreme duress or under the substantial domination of another person.

(f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.

(g) The age of the defendant at the time of the crime.

Under *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Hitchcock v. Dugger,* — U.S. —, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), the capital sentencer may not be precluded from considering evidence of nonstatutory mitigating factors.

2d 908, 910 (Fla.1975), the court held that a trial judge can override a life recommendation only when "the facts [are] so clear and convincing that virtually no reasonable person could differ." That the court meant what it said in *Tedder* is amply demonstrated by the dozens of cases in which it has applied the *Tedder* standard to reverse a trial judge's attempt to override a jury recommendation of life. *See, e.g., Wasko v. State*, 505 So.2d 1314, 1318 (Fla.1987); *Brookings v. State*, 495 So.2d 135, 142–43 (Fla.1986); *McCampbell v. State*, 421 So.2d 1072, 1075–76 (Fla.1982); *Goodwin v. State*, 405 So.2d 170, 172 (Fla.1981); *Odom v. State*, 403 So.2d 936, 942–43 (Fla.1981), *cert. denied*, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982); *Neary v. State*, 384 So.2d 881, 885–88 (Fla.1980); *Malloy v. State*, 382 So.2d 1190, 1193 (Fla.1979); *Shue v. State*, 366 So.2d 387, 390–91 (Fla. 1978); *McCaskill v. State*, 344 So.2d 1276, 1280 (Fla.1977); *Thompson v. State*, 328 So.2d 1, 5 (Fla.1976).

The attorney general argues that although the trial court may be required under *Tedder* to give deference to a jury recommendation of life, it is in no way similarly bound to give deference to a jury recommendation of death. Since a Florida sentencing jury can therefore never play a substantive role in imposing a *death* sentence, the attorney general contends, *Caldwell* can never be implicated in a Florida case.

One problem with this argument is that its central premise—that the sentencing jury plays no substantive role in imposing a death sentence—is contradicted by numerous pronouncements by the Supreme Court of Florida. The issue of what deference is due a jury recommendation of death would arise most directly when the jury recommends death and the trial judge rejects the recommendation and imposes life imprisonment. Such cases never appear before the supreme court, however, because the state cannot appeal a sentence of life imprisonment. *See State v. Dixon*, 283 So.2d 1, 8 (Fla.1973), *cert. denied*, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Nonetheless, the issue has arisen in cases where the jury recommends death, the trial court imposes death, and the defendant contends on direct appeal that the trial court improperly weighed the aggravating and mitigating circumstances. In one such recent case, *Smith v. State*, 515 So.2d 182 (Fla. 1987), the supreme court held that "[a]lthough we find that one of the five aggravating circumstances relied on by the trial court was invalid, *we approve the death sentence on the basis that a jury recommendation of death is entitled to great weight* and there were no mitigating circumstances to counterbalance the four valid aggravating circumstances." *Id.* at 185 (emphasis added). In *LeDuc v. State*, 365 So.2d 149 (Fla.1978), *cert. denied*, 444 U.S. 885, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979), the supreme court stated that "[t]he primary standard for our review of death sentences is that *the recommended sentence of a jury should not be disturbed* if all reasonable data was considered, unless there appear strong reasons to believe that reasonable persons could not agree with the recommendation." *Id.* at 151 (citing *Tedder*) (emphasis added). *See also Middleton v. State*, 426 So.2d 548, 552–53 (Fla. 1982) (approving trial court's imposition of death sentence and reiterating in conclusion that jury had recommended death), *cert. denied*, 463 U.S. 1230, 103 S.Ct. 3573, 77 L.Ed.2d 1413 (1983); *Francois v. State*, 407 So.2d 885, 891 (Fla.1982) (same), *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3511, 73 L.Ed.2d 1384 (1982); *Enmund v. State*, 399 So.2d 1362, 1373 (Fla.1981) (same), *rev'd on other grounds*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *cf. Grossman v. State*, 525 So.2d 833, 839 n. 1, 13 Fla.L.Weekly 127, 133 n. 1 (Fla.1988) ("We have ... held that a jury recommendation of death should be given great weight."). On one occasion, the supreme court went so far as to suggest that the trial judge's role in sentencing is merely to articulate findings in support of the jury's sentencing decision. *See Provenzano v. State*, 497 So.2d 1177, 1185 (Fla.1986) ("[T]he trial judge does not consider the facts anew. In sentencing a defendant, a judge lists reasons to support a finding in regard to mitigating or aggravating

factors."), *cert. denied,* — U.S. —, 107 S.Ct. 1912, 95 L.Ed.2d 518 (1987).

The issue of what deference is due a jury recommendation of death has also arisen in cases where the jury recommends death, the trial judge imposes death, and the defendant claims on direct appeal that the trial judge gave undue deference to the jury's recommendation. The Supreme Court of Florida has consistently indicated in such cases that no error occurs when the trial judge gives due weight to the jury recommendation of death. In *Garcia v. State,* 492 So.2d 360 (Fla.), *cert. denied,* — U.S. —, 107 S.Ct. 680, 93 L.Ed.2d 730 (1986), for instance, the judge stated in his instructions to the jury that their recommendation "would not be overruled unless there was no reasonable basis for it." *Id.* at 367. The jury returned a recommendation of death and the trial court entered a sentence of death. On direct appeal, the defendant claimed, citing the trial court's instructions to the jury, that the judge had mistakenly given weight to the jury's recommendation of death. The supreme court disagreed and affirmed the death sentence: "There is no error; this is the law. It is appropriate to stress to the jury the seriousness which it should attach to its recommendation *and, when the recommendation is received, to give it weight."* *Id.* (emphasis added). *See also Rogers v. State,* 511 So.2d 526, 536 (Fla.1987) (no merit to appellant's contention that trial court gave undue weight to jury's recommendation of death where record reflects that "the court has weighed relevant factors and reached its own independent judgment about the reasonableness of the

jury's recommendation."), *cert. denied,* — U.S. —, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988).[6]

The supreme court's understanding of the jury's sentencing role is illustrated by the way it treats sentencing error. In cases where the trial court follows a jury recommendation of death, the supreme court will vacate the sentence and order resentencing before a new jury[7] if it concludes that the proceedings before the original jury were tainted by error. Thus, the supreme court has vacated death sentences where the jury was presented with improper evidence, *see Dougan v. State,* 470 So.2d 697, 701 (Fla.1985), *cert. denied,* 475 U.S. 1098, 106 S.Ct. 1499, 89 L.Ed.2d 900 (1986), or was subject to improper argument by the prosecutor, *see Teffeteller v. State,* 439 So.2d 840, 845 (Fla.1983), *cert. denied,* 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984). The supreme court has also vacated death sentences where the trial court gave the jury erroneous instructions on mitigating circumstances or improperly limited the defendant in his presentation of evidence of mitigating circumstances. *See Thompson v. Dugger,* 515 So.2d 173, 175 (Fla.1987); *Downs v. Dugger,* 514 So.2d 1069, 1072 (Fla.1987); *Riley v. Wainwright,* 517 So.2d 656, 659–60 (Fla.1987); *Valle v. State,* 502 So.2d 1225, 1226 (Fla. 1987); *Floyd v. State,* 497 So.2d 1211, 1215–16 (Fla.1986); *Lucas v. State,* 490 So.2d 943, 946 (Fla.1986); *Simmons v. State,* 419 So.2d 316, 320 (Fla.1982); *Miller v. State,* 332 So.2d 65, 68 (Fla.1976). In these cases, the supreme court frequently focuses on how the error may have affected the jury's recommendation. *See, e.g.,*

---

**6.** *Ross v. State,* 386 So.2d 1191 (Fla.1980), is not inconsistent with the proposition that the trial judge must give great weight to a jury recommendation of death. In *Ross,* the jury recommended death and the trial judge imposed a death sentence, indicating in his findings that he was bound by the jury's recommendation. *Id.* at 1197. The Supreme Court of Florida ordered resentencing, stating that although a jury recommendation of death "should be given great weight and serious consideration," *id.,* this trial judge had given the recommendation "undue weight," *id.* at 1193, by abdicating his statutory duty to make an "independent judgment" about the aggravating and mitigating circumstances. *Id.* at 1198.

**7.** The Supreme Court of Florida has permitted resentencing without a jury where the error in the original proceeding related to the trial court's findings and did not affect the jury's recommendation. *See, e.g., Menendez v. State,* 419 So.2d 312, 314 (Fla.1982); *Mikenas v. State,* 407 So.2d 892, 893 (Fla.1981), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982); *Magill v. State,* 386 So.2d 1188, 1191 (Fla.1980), *cert. denied,* 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981); *Fleming v. State,* 374 So.2d 954, 959 (Fla.1979). Such were the circumstances in this very case. *See supra* note 2.

*Riley*, 517 So.2d at 659 ("If the jury's recommendation, upon which the judge must rely, results from an unconstitutional procedure, then the entire sentencing process necessarily is tainted by that procedure."); *Valle*, 502 So.2d at 1226 ("[U]nless it is clear beyond a reasonable doubt that the erroneous exclusion of evidence did not affect the jury's recommendation of death, the defendant is entitled to a new jury recommendation on resentencing."); *Dougan*, 470 So.2d at 701 (death sentence vacated and resentencing ordered where supreme court could not "tell how the improper evidence and argument may have affected the jury"); *Teffeteller*, 439 So.2d at 845 (death sentence vacated and resentencing ordered where supreme court could not "determine that the needless and inflammatory comments by the prosecutor did not substantially contribute to the jury's advisory recommendation of death"). Such a focus would be illogical unless the supreme court began with the premise that the jury's recommendation must be given significant weight by the trial judge. Once that premise is established, a focus on how the error may have affected the jury's recommendation makes sense: if the jury's recommendation is tainted, then the trial court's sentencing decision, which took into account that recommendation, is also tainted.

Finally, we note that the Supreme Court of Florida has ordered resentencing in cases where the trial court excused a prospective juror in violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). *See, e.g., Chandler v. State*, 442 So.2d 171, 173–75 (Fla.1983). Under *Witherspoon* and its progeny, a state violates a capital defendant's right to trial by impartial jury when it excuses for cause a prospective juror who has voiced conscientious objections to the death penalty, unless the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 433, 105 S.Ct. 844, 857, 83 L.Ed.2d 841 (1985). *Witherspoon* assumes, of course, that the jury will play a substantive role in the sentencing decision.

By applying *Witherspoon* to vacate death sentences, then, the Supreme Court of Florida implicitly acknowledges that the jury plays a substantive role under the Florida capital sentencing scheme.

Thus, in various ways, the Florida case law evinces an interpretation of the death penalty statute that requires a trial judge to give great weight to a jury's sentencing recommendation. As our review of the case law shows, that requirement applies as to both recommendations of life imprisonment and recommendations of death.

### B.

In analyzing the role of the sentencing jury, the Supreme Court of Florida has apparently been influenced by a normative judgment that a jury recommendation of death carries great force in the mind of the trial judge. This judgment is most clearly reflected in cases where an error has occurred before the jury, but the trial judge indicates that his own sentencing decision is unaffected by the error. As a general matter, reviewing courts presume that trial judges exposed to error are capable of putting aside the error in reaching a given decision. The Supreme Court of Florida, however, has on occasion declined to apply this presumption in challenges to death sentences. For example, in *Messer v. State*, 330 So.2d 137 (1976), the trial court erroneously prevented the defendant from putting before the sentencing jury certain psychiatric reports as mitigating evidence. The jury recommended death and the trial judge imposed the death penalty. The supreme court vacated the sentence, even though the sentencing judge had stated that he had himself considered the reports before entering sentence. The supreme court took a similar approach in *Riley v. Wainwright*, 517 So.2d 656 (Fla.1987). There, the defendant presented at his sentencing hearing certain nonstatutory mitigating evidence. The trial court instructed the jury that it could consider statutory mitigating evidence, but said nothing about the jury's obligation under *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), to consider nonstatutory mitigating

evidence. The jury recommended death and the trial judge imposed the death penalty. In imposing the death sentence, the trial judge expressly stated that he had considered all evidence and testimony presented.[8] On petition for writ of habeas corpus, the supreme court ordered the defendant resentenced. The court held that the jury had been precluded from considering nonstatutory mitigating evidence, and that the trial judge's consideration of that evidence had been "insufficient to cure the original infirm recommendation." *Id.* at 659 n. 1.

In light of the disposition of these cases, it would seem that the Supreme Court of Florida has recognized that a jury recommendation of death has a *sui generis* impact on the trial judge, an impact so powerful as to nullify the general presumption that a trial judge is capable of putting aside error. We do not find it surprising that the supreme court would make this kind of normative judgment. A jury recommendation of death is, after all, the final stage in an elaborate process whereby the community expresses its judgment regarding the appropriateness of a death sentence. The process begins with the legislature, which broadly defines the class of cases for which capital punishment is appropriate. Then, in the particular case, the prosecutor, who is electorally accountable to the community, makes the decision whether to request the death penalty. Finally, the jury, traditionally depicted as the

conscience of the community, makes a judgment about the appropriateness of death in light of aggravating and mitigating circumstances. Thus, by the time the case comes before the judge for the actual imposition of sentence, it has already been filtered through three levels of community sentiment, each level less porous than the preceding one.[9] It would indeed be surprising were the trial judge, who in Florida is also an electorally accountable official, not powerfully affected by the result of that process.

### C.

■ In light of the case law, we conclude that the Florida jury plays an important role in the Florida capital sentencing scheme. The case law reflects an interpretation of the death penalty statute that requires the trial court to give significant weight to the jury's recommendation, whether it be a recommendation of life imprisonment or a recommendation of death. The case law also reflects, we think, an insightful normative judgment that a jury recommendation of death has an inherently powerful impact on the trial judge.

■ Because the jury's recommendation is significant in these ways, the concerns voiced in *Caldwell* are triggered when a Florida sentencing jury is misled into believing that its role is unimportant.[10] Un-

---

**8.** The trial judge made this statement on a resentencing. On Riley's direct appeal of his original sentence, the supreme court ordered resentencing on the ground that the trial judge had considered nonstatutory aggravating factors, in violation of state law. *Riley v. State,* 366 So.2d 19 (Fla.1978). The resentencing was accomplished without empaneling a new jury. At the resentencing, the trial judge permitted Riley to introduce additional mitigating evidence. The resentencing was affirmed on direct appeal. *Riley v. State,* 413 So.2d 1173 (Fla.), *cert. denied,* 459 U.S. 981, 103 S.Ct. 317, 74 L.Ed.2d 294 (1982).

**9.** It is at least partly because of these dynamics, we may surmise, that the Supreme Court of Florida has interpreted the legislative intent underlying the death penalty statute as requiring the trial judge to give great weight to the jury's recommendation.

**10.** Florida could, if it so desired, administer a capital sentencing scheme in which the jury played no role. *See Spaziano v. Florida,* 468 U.S. 447, 465, 104 S.Ct. 3154, 3165, 82 L.Ed.2d 340 (1984) ("[T]here is no constitutional imperative that a jury have the responsibility of deciding whether the death sentence should be imposed...."). The fact of the matter is, however, that under the existing scheme in Florida the jury *does* share in capital sentencing responsibility. Because the jury's recommendation is a critical factor in the ultimate sentencing decision, the jury's function, like the function of any capital sentencer, must be evaluated pursuant to eighth amendment standards. This court, in various contexts in federal habeas cases, has treated the Florida jury as if it were a sentencer for constitutional purposes. For example, in *Jackson v. Dugger,* 837 F.2d 1469 (11th Cir. 1988), we held that the eighth amendment is violated when a Florida sentencing jury is in-

der such circumstances, a real danger exists that a resulting death sentence will be based at least in part on the determination of a decisionmaker that has been misled as to the nature of its responsibility. Such a sentence, because it results from a formula involving a factor that is tainted by an impermissible bias in favor of death, necessarily violates the eighth amendment requirement of reliability in capital sentencing. *See Adams v. Wainwright,* 804 F.2d 1526, 1532 (11th Cir.1986), *modified,* 816 F.2d 1493 (11th Cir.1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 1106, 99 L.Ed.2d 267 (1988).

### III.

Having determined that the sentencing jury plays a substantive role under the Florida capital sentencing scheme, we turn to the question whether the jury in this case was misled as to its role so as to render petitioner's sentence invalid under the eighth amendment. We begin with a thorough examination of the trial record.

### A.

The first reference to the jury's role was made as the jury was being selected, during counsel's voir dire of the venire. The prosecutor said the following:

> The recommendation that you make to Judge Federico in [the sentencing] portion of the trial is simply a recommendation, and he is not bound by it. He may impose whatever sentence the law permits. He will have been here and will have listened to all the testimony himself.

structed that, once it finds the victim's murder to have been committed under aggravating circumstances, death is presumed to be the appropriate sentence.

To date, the Supreme Court of Florida has refused to grant relief on *Caldwell* claims. *See Combs v. State,* 525 So.2d 853, 855–58, 13 Fla.L.Weekly 142, 143–44 (1988); *Grossman v. State,* 525 So.2d 833, 839–40, 13 Fla.L.Weekly 127, 129–30 (1988); *Foster v. State,* 518 So.2d 901, 901–02 (Fla.1987); *Smith v. State,* 515 So.2d 182, 185 (Fla.1987); *Aldridge v. State,* 503 F.2d 1257, 1259 (Fla.1987); *Pope v. Wainwright,* 496 So.2d 798, 804–05 (Fla.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987). We

A few moments later, the prosecutor repeated this point in stronger terms:

> You understand you do not impose the death penalty; that is not on your shoulders.... Again, that decision rests up here with the law, with Judge Federico. You will have the opportunity after you have heard everything there is to hear to make a recommendation to him. But it is not legally on your shoulders, though. It is not your ultimate decision. You act in that regard in an advisory capacity only.

The prosecutor repeated the point again that afternoon, in a dialogue with two veniremen:

> You ... understand that the ultimate responsibility rests with the Court; that it's not the jury's responsibility?

During closing argument at the conclusion of the guilt phase of the trial, the prosecutor once again informed the jury that "[t]he matter of sentencing ultimately rests with [the] Court."

After the jury rendered its verdict of guilty, the jurors were temporarily excused from the courtroom while the court and counsel made preliminary preparations for the sentencing phase of the trial. At that time, defense counsel requested that the jury, when it returned, be instructed by the court that its sentencing recommendation would be "entitled to great weight." The court refused to grant the request:

> THE COURT: Well, I think that goes without saying. I don't know if I need to instruct them that that is so.

do not read these cases as necessarily holding that a *Caldwell* violation could *never* occur in a Florida case. *See Smith,* 515 So.2d at 185 (no *Caldwell* violation provided "the jury instructions properly stress the importance of the jury role"); *Pope,* 496 So.2d at 805 (no *Caldwell* violation "as long as the significance of [the jury's] recommendation is adequately stressed"). In any event, we are not bound by a state court's application of federal constitutional principles. We look to that court's pronouncements only to determine the nature of the sentencing process; we independently decide how the federal Constitution applies to claims pertaining to that process as thus defined.

[DEFENSE COUNSEL]: I think it is. The reason we would ask—

THE COURT: That's something that I need to do after they make their recommendation, and I will give it great weight.

⸰ [DEFENSE COUNSEL]: I know, but they need to know that so they know we're not up there just—

THE COURT: I think the standard instructions bring home to them that it is very important that they, you know, [d]o not act hastily or without due regard to the gravity of these proceedings, that they should carefully weigh and sift and consider the evidence. I think that's sufficient.

Notwithstanding his apparent understanding of the sentencing jury's function, the judge informed the jurors when they returned to the courtroom that "[t]he final decision as to what punishment shall be imposed rests solely with the judge of this court." The prosecutor repeated the point in the final statement of his closing argument at the conclusion of the sentencing phase:

What I'm suggesting to you is that the ultimate responsibility for the imposition of the sentence rests with Judge Philip Federico. That is his sworn position in the system. He's heard everything you have heard. He may have the opportunity to learn more before he imposes a sentence. I think this community, as represented by this jury, should give to him the prerogative of imposing the death penalty, if that's what he ultimately feels is required in this case.

The court then read its instructions to the jury. The instructions included the following statements regarding the jury's sentencing function:

Ladies and gentlemen of the jury, it is now your duty to advise the Court as to what punishment should be imposed on the Defendant for his crime of murder in the first degree. As you have been told, the final decision as to what punishment shall be imposed is the responsibility of the judge. However, it is your duty to follow the law which will now be given to

you by the Court and render to the Court an advisory opinion based upon your determination as to whether sufficient aggravating circumstances exist to justify the imposition of the death penalty, whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist.

The court's instructions also included the following statements:

The fact that the determination of whether or not a majority of you recommend a sentence of death or sentence of life imprisonment in this case can be reached by a single ballot should not influence you to act hastily or without due regard to the gravity of these proceedings. Before you ballot, you should carefully weigh, sift and consider the evidence, and all of it, realizing that a human life is at stake, and bring to bear your best judgment upon the sole issue which is submitted to you at this time, of whether a majority of your number recommend that the Defendant be sentenced to death or to life imprisonment.

After the court finished reading the instructions, it ordered the jury to retire and make a decision. When the jury returned, it announced a recommendation of death. The jury was polled and then dismissed. After the bailiff had declared that "[t]he jury has left the courtroom," the judge remarked, for the record, that "[t]he court, as required by law, will give great weight to the recommendation of the jury."

### B.

In reviewing *Caldwell* claims, our task is twofold. First, we must determine whether the prosecutor's comments to the jury were such that they would "minimize the jury's sense of responsibility for determining the appropriateness of death." *Caldwell*, 472 U.S. at 341, 105 S.Ct. at 2646. Second, if the comments would have such effect, we must determine "whether the trial judge in this case sufficiently corrected the impression left by the prosecutor." *McCorquodale v. Kemp*, 829 F.2d 1035, 1037 (11th Cir.1987).

■ When a trial court does not correct misleading comments as to the jury's sentencing role, the state has violated the defendant's eighth amendment rights because the court has given the state's imprimatur to those comments; the effect is the same as if the trial court had actually instructed the jury that the prosecutor's comments represented a correct statement of the law. *See Tucker v. Kemp*, 802 F.2d 1293, 1295 (11th Cir.1986) (en banc), *cert. denied*, —— U.S. ——, 107 S.Ct. 1359, 94 L.Ed.2d 529 (1987). When a trial court does make some attempt to correct the prosecutor's misleading comments, the question becomes whether the corrective statement would, in the mind of a reasonable juror who had been exposed to the misleading comments, correct the misapprehension that the comments would induce. Because our focus is ultimately on the trial court's actions,[11] our mode of review is similar to that used to review claims based on erroneous jury instructions. *Cf. Lamb v. Jernigan*, 683 F.2d 1332, 1339–40 (11th Cir.1982) (court must consider effect of erroneous instruction on reasonable juror "in light of the remainder of the charge and the entire trial"), *cert. denied*, 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983).

■ In this case, the comments by the prosecutor were such that they would mislead or at least confuse the jury as to the nature of its sentencing responsibility under Florida law. It bears emphasizing that the prosecutor in *Caldwell* stated only that the jury's verdict would be "automatically reviewable." Technically, this statement was an accurate statement of Mississippi law—death sentences *are* automatically reviewed by the Supreme Court of Mississippi under Miss.Code Ann. § 99–19–105. The mischief was that the statement, unexplained, would have likely been misunderstood by the jurors as meaning that their judgment call on the appropriateness of a death sentence did not really matter. We are faced with a similar situation here. The prosecutor repeatedly told the jury that its task was to render an "advisory" recommendation. As with "automatically reviewable" in *Caldwell*, this characterization is technically accurate, at least in the sense that the Florida death penalty statute contains the term "advisory." However, the danger exists that the jurors, because they were unaware of the body of law that requires the trial judge to give weight to the jury recommendation, were misinformed as to the importance of their judgment call. The danger is particularly strong here, because nothing in the common meaning of the term "advisory" would suggest to the layman that the trial judge would in any way be bound by the recommendation; indeed, the common meaning of the term would suggest precisely the contrary.

Moreover, here the prosecutor stated to the jurors twice that the burden of imposing the death penalty was "not on your shoulders."[12] He repeatedly told the ju-

---

11. As we noted in *McCorquodale*, the Supreme Court did not say in *Caldwell* that *any* misleading comment by the prosecutor would constitute ground for reversal; "rather it stated that '[s]uch comments, *if left uncorrected*, might so affect the fundamental fairness of the sentencing proceeding as to violate the Eighth Amendment.'" *McCorquodale*, 829 F.2d at 1037 (quoting *Caldwell*, 472 U.S. at 340, 105 S.Ct. at 2645). Thus, the proper focus is on whether the trial court's actions were sufficient to correct the misimpression created by the prosecutor's comments. *See also Caldwell*, 472 U.S. at 333, 105 S.Ct. at 2641–42 ("[T]he *uncorrected* suggestion that the responsibility for any ultimate determination of death will rest with others presents an intolerable danger....") (emphasis added); *Tucker v. Kemp*, 802 F.2d 1293, 1295 (11th Cir. 1986) (en banc) ("Of critical importance in *Cald-*

*well* was the fact the trial judge approved of the prosecutor's comments...."), *cert. denied*, —— U.S. ——, 107 S.Ct. 1359, 94 L.Ed.2d 529 (1987).

12. As we have noted, a number of the misleading comments were made before the jury was selected, during voir dire. At first blush, one might think that such comments at that stage of the trial proceeding would benefit the defendant. One might think that a prospective juror who holds strong personal reservations about the death penalty would, upon hearing that he will not be responsible for the sentencing decision, be less inclined to express those reservations in open court. The ultimate result might be that the prosecutor would be disabled from excusing for cause some prospective jurors who would otherwise be properly excusable under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct.

rors that the responsibility for imposing sentence rested with the trial judge. Additionally, we note that the prosecutor suggested to the jurors that the trial judge, because of his position as a legal authority, was more able than the jury to make the appropriate sentencing decision. As the Supreme Court noted in *Caldwell,* this kind of suggestion induces jurors, who are "placed in a very unfamiliar situation and called on to make a very difficult and uncomfortable choice," to delegate wrongly their sentencing responsibility. *Caldwell,* 472 U.S. at 333, 105 S.Ct. at 2641–42. We conclude that the prosecutor's statements, considered together, misrepresent the nature of the jury's critical role under the Florida capital sentencing scheme.[13] Such comments, if uncorrected, would undoubtedly minimize a juror's sense of responsibility, thus creating "a danger of bias in favor of the death penalty." *Adams,* 804 F.2d at 1532.

Turning to the second prong of our inquiry, we conclude that the trial judge's comments did not correct the false impression left by the prosecutor. The trial court specifically denied defense counsel's request that the jury be properly informed as to its role. Moreover, the judge himself stated that the final sentencing decision rested *"solely* with the judge of this court." The trial judge expressly put the court's imprimatur on the prosecutor's previous misleading statements by saying to the jurors that *"[a]s you have been told,* the final decision as to what punishment shall be imposed is the responsibility of the judge."[14]

The only potentially corrective statement by the court came when the court instructed the jurors that they should proceed with "due regard to the gravity" of the matter and should "carefully weigh, sift and consider the evidence, and all of it, realizing that a human life is at stake, and bring to bear your best judgment." This statement, we conclude, did not cure the harm posed by the court's other actions. The statement would do little if anything to change a juror's misapprehension about the *effect* of the jury's decision; it only instructs the jurors that they should approach their task with care and deliberation. At best, it likely left some jurors confused as to their proper role. We therefore conclude that the court's actions, as considered by a reasonable juror who had been exposed to the prosecutor's misleading comments, did not correct the false impression created by those comments. *Cf. Caldwell,* 472 U.S. at 340 n. 7, 105 S.Ct. at 2645 n. 7 (prosecutor's later statements did not retract or undermine the misimpression created by the earlier statements). Because the overall effect of the court's actions was to diminish the jury's sense of responsibility with regard to its sentencing role, petitioner's sentence is invalid under the eighth amendment.

## IV.

In conclusion, we reverse the district court's denial of the writ of habeas corpus with regard to petitioner's *Caldwell* claim. We remand the case to the district court with instructions to issue the writ setting

1770, 20 L.Ed.2d 776 (1968). Thus, one might think, the misleading comments could ultimately have a beneficial effect from the defendant's point of view.

Even if there were the potential for some marginal benefit, the dangers outlined in *Caldwell* would remain. The statements that were made during the voir dire were not isolated; they were not directed solely at those prospective jurors who had expressed reservations about the death penalty. Rather, they were made before the prospective jurors collectively, at a time when the prosecutor was purportedly outlining the role of the jury. This court has recognized in the past that comments made prior to the sentencing phase can establish a *Caldwell* violation. *See Adams v. Wainwright,*

804 F.2d 1526, 1531 n. 7 (11th Cir.1986), *modified,* 816 F.2d 1493 (11th Cir.1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 1106, 99 L.Ed.2d 267 (1988).

**13.** *See* part II, *supra.*

**14.** The only statement suggesting to the jurors that their role was important was a single isolated statement made by defense counsel during jury selection. In light of the prosecutor's repeated suggestions throughout the proceedings that the jury's role was unimportant, we are satisfied that when the jurors heard the trial judge say "as you have been told," they understood the reference to be the prosecutor's portrayal of their role.

aside petitioner's death sentence unless the State affords petitioner a new sentencing proceeding before a newly empaneled jury.

REVERSED and REMANDED.

CLARK, Circuit Judge, specially concurring:

I concur with Judge Tjoflat's opinion in the *Mann* case which finds that there was a *Caldwell* violation. I also concur with Judge Tjoflat's specially concurring opinion in *Harich* which concludes that there is no *Caldwell* violation. I was on the panel in both cases and wrote something with respect to the *Caldwell* issue in each case. *See Mann v. Dugger,* 817 F.2d 1471, 1489 (11th Cir.1987), and *Harich v. Wainwright,* 813 F.2d 1082, 1089, 1098 (11th Cir.1987). I have read the record in both of the cases and agree with Judge Tjoflat and the others concurring with him that there is a meaningful difference.

In a *Caldwell*-type case, it is essential that one determine the jury's perception of its role during the sentencing phase of the trial. That is, was the jurors' collective sense of responsibility lessened when asked to decide whether life or death was the appropriate penalty. The answer depends on an analysis of the particular facts and circumstances of each case. The trial court may explain to the jury its advisory role, "as long as the significance of [the jury's] recommendation is adequately stressed." *Harich v. Wainwright,* 813 F.2d 1082, 1101 (11th Cir.1987) (quoting *Pope v. Wainwright,* 496 So.2d 798 (Fla.1986)).

In *Mann,* the prosecutor made the following statements during the voir dire examination:

The recommendation that you make to Judge Federico in this portion of the trial is **simply a recommendation, and he is not bound by it.** He may impose whatever sentence the law permits. He will have been here and will have listened to all of the testimony himself.

\* \* \* \* \* \*

[Y]ou understand **you do not impose the death penalty. That is not on your** shoulders. **The ultimate decision rests with Judge Federico.**

\* \* \* \* \* \*

Again, **that decision rests up here with the law, with Judge Federico.** You will have the opportunity after you have heard everything there is to hear to make a recommendation to him. **But it is not legally on your shoulders,** though. **It is not your ultimate decision.** You act in that regard in an **advisory capacity only.**

817 F.2d at 1489 (emphasis added).

Following are the judge's comments at the beginning of the sentencing proceeding:

The punishment for this crime is either death or life imprisonment. The final decision as to what punishment shall be imposed rests **solely with the judge** of this court. However, the law requires that you, the jury render to the court an **advisory sentence** as to what sentence should be imposed on the defendant.

*Id.* (emphasis added). It is clear from the above that the prosecutor and the court misled the jury as to its responsibility. The last thought left with the jury by the prosecutor in his closing argument at sentencing replayed his earlier statements:

What I'm suggesting to you is that the ultimate responsibility for the imposition of the sentence rests with Judge Philip Federico. That is his sworn position in the system. He's heard everything you have heard. He may have the opportunity to learn more before he imposes a sentence.

Transcript at 2439. The foregoing flagrant misstatement by the prosecutor was followed soon thereafter by Judge Federico's instructions to the jury, which included the following:

Ladies and Gentlemen of the jury, it is now your duty to advise the court as to what punishment should be imposed on the defendant for his crime of murder in the first degree. *As you have been told,* **the final decision as to what punishment shall be imposed is the responsibility of the judge.** However, it is your duty to follow the law which will now be

given to you by the court and render to the court an **advisory opinion** based upon your determination....

817 F.2d at 1490 (emphasis added). Clearly the jurors' perception of their role was minimized by the prosecutor's statement and then the trial court's endorsement when the court said "as you have been told...." The defense attorneys did not address the role of the jury in their closing arguments, making clear that the judge's reference was to the prosecutor's misdescription of the jurors' role.

The circumstances of this case indicate there was an intolerable danger that the jury recommended the death penalty because it did not understand that its recommendation would, to some extent, bind the trial court to a particular result. The jurors heard compelling mitigating evidence that Mann suffered from psychotic depression, and that he committed this crime during a fit of pedophilic rage. They were told that Mann attempted to commit suicide by slashing his forearms shortly after the crime had been committed. He had attempted suicide several times in the past. When the police came to his aid on the day of the murder, Mann said he had done something stupid and needed help. At the sentencing hearing, a psychiatrist testified that Mann committed the crime while under the influence of an extreme mental or emotional disturbance. The victim, a 10 year-old girl, intensified his feelings of guilt regarding his pedophilic instincts, thus channeling his self-destructive rage into an act of violence. Faced with a difficult decision, the jurors were quite susceptible to a suggestion that the sentencing decision was "not on [their] shoulders." The improper comments in this case created the "intolerable danger" that the advisory jury gave its recommendation without truly understanding its proper role.

With respect to the identical issue in the *Harich* case, the prosecutorial and judicial comments in this case did not minimize the role of the jury. The statements went no further than explaining to the jury the respective functions of the judge and jury. The jury was told to listen to the evidence, weigh the aggravating and mitigating circumstances and render an advisory opinion as to the applicability of the death penalty in this case. Nothing was said which would imply to the jury that its recommendation was superfluous or that the importance of the jury's decision was lessened by the fact that it was only a recommendation. Upon examination of the record, one concludes that the seriousness of the jury's advisory role was adequately communicated by the court and prosecutor. As mentioned in the discussion of the *Mann* case, the Florida Supreme Court has stated that comments which accurately explain the respective functions of the judge and jury are permissible under *Caldwell* "as long as the significance of [the jury's] recommendation is adequately stressed." *Pope v. Wainwright*, 496 So.2d 798 (Fla.1986).

In distinguishing between *Mann* and *Harich*, it is necessary to analyze the context in which the statements are made with respect to the jury's sense of responsibility for its sentencing decision. In *Mann* there were a number of statements by the prosecutor which reduced the jurors' perception of their duty vis-a-vis the judge's duty, and the court's comments in *Mann* gave emphasis to what the prosecutor had said. However, in *Harich* [*Harich v. Dugger*, 844 F.2d 1464] there is very little to which one can point that was said by the prosecutor that would have misled the jury. Judge Vance in his dissent at pages 1483–84 recites one statement by the prosecutor. The balance of the statements in that dissent are quotations from what the trial judge told the jury and those statements read in the context of the total instructions and comments of both counsel do not reduce the importance of the jury's role during the sentencing phase. At page 1476 of his special concurrence, Judge Tjoflat points out statements by the trial judge and defense counsel which emphasize the importance of the juror's responsibility. Similar statements are not found in the *Mann* trial.

Thus, I have no trouble in joining the majority in *Mann* that the writ be issued unless a new trial is granted, and also

concurring with the majority in *Harich* that the petition be denied.

FAY, Circuit Judge, dissenting, in which RONEY, Chief Judge, HILL and EDMONDSON, Circuit Judges, join:

Most respectfully, I dissent from the conclusion reached in the majority opinion that there is merit in the *Caldwell* claim presented by the petitioner. Our court is issuing opinions in *Harich v. Dugger* and in this case which contain lengthy discussions of *Caldwell* claims and how they are to be evaluated. I join in the statement of Judge Tjoflat in his special concurrence in *Harich* that: "The relevant question under *Caldwell* is whether remarks made at trial lessened the jury's sense of responsibility toward its role of determining whether the death penalty is appropriate." From our perspective as members of the Court of Appeals, this necessarily involves a case by case approach with detailed review of the entire record of any given case. The bottom line, however, is the subjective reaction of each individual judge to the language and text of the record. In this case, it is my opinion that no *Caldwell* violation occurred. Phrased in the words of the "relevant question," this record convinces me that none of the remarks of the judge, prosecutor or defense counsel lessened, in any way, the jury's sense of responsibility toward its role in deciding whether or not death was the appropriate penalty.

The majority finds that at trial, the prosecutor misled the jury as to its sentencing role by stating that (1) its sentence recommendation was advisory, and (2) the ultimate responsibility for imposition of the sentence rests with the judge. The majority also concluded that the trial judge did not correct the false impression left by the prosecutor. *See ante* section III. In my opinion, the record does not support these findings.

I agree with the majority's analysis of the role of the trial judge in determining whether a *Caldwell* violation occurred. *See ante* at 1456 (citing *McCorquodale v. Kemp*, 829 F.2d 1035, 1037 (11th Cir.1987)). The trial judge should take steps to correct the impression made when a prosecutor's inaccurate statements diminish a jury's sense of responsibility in a capital sentencing case. In such a case, a trial judge's curative response could negate a potential *Caldwell* violation. However, in this case, there was no need for such a correction since no misimpression had been given.

In Florida, comments made by the prosecutor which emphasize the "advisory" role of the jury or indicate that the jury is making a "recommendation" to the judge, do not support a *Caldwell* claim. *See Harich v. Wainwright*, 844 F.2d at 1473–74 (11th Cir.1988) (en banc); *Combs v. State*, 525 So.2d 853, 13 Fla.L.Weekly 142 (Fla. 1988). Under Florida's death penalty statute the jury's role *is* advisory. After receiving the jury's recommendation, the trial judge must independently weigh the aggravating and mitigating circumstances and render sentence.[1]

> It serves no purpose to dwell on the word 'advisory' [or 'recommendation'] as does the majority, because that is the procedural structure established by the Florida statutes. The jury's verdict as to the appropriate sentence is advisory. The question is whether the jury was somehow given an erroneous understanding of its responsibility.

*Mann v. Dugger*, 817 F.2d 1471, 1485 (11th Cir.1987) (Fay, J., dissenting) (panel opinion). Such comments are neither inaccurate nor misleading.

Moreover, in this case the prosecutor made the controversial comments during voir dire at the *suggestion of defense counsel.* The prosecutor was discussing death

1. *See* Fla.Stat. § 921.141 (1985). The Supreme Court held that the division of authority between the jury and the trial judge under the Florida death penalty statute is constitutional. *See Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). In *Spaziano*, the Court made reference to the fact that the jury's recommendation is entitled to some deference by the trial court. 468 U.S. at 465–66, 104 S.Ct. at 3164–65.

penalty concerns with the prospective jurors when one member of the venire stated that he would be unable to find the defendant guilty if it could lead to a death sentence. Trial Transcript at 105. The attorneys then held a side-bar conference with the judge. At this conference the *defense counsel* suggested that someone should inform the jury of the bifurcated system used in Florida to determine guilt and sentencing.[2] The prosecutor followed this suggestion and gave the jury an accurate summation of its role under the Florida system.[3] Defense counsel supplemented the prosecutor's explanation by stating that should the jury find the defendant guilty of first degree murder, the judge would give the jury's sentencing recommendation great weight.[4]

2. During the side-bar conference, defense counsel stated:

> I think, first of all, I would just like to have the right to try to rehabilitate this gentleman who made these for cause statements earlier and perhaps the—we should have a right to try to rehabilitate him in this respect. I think he is of the opinion, not understanding the bifurcated system, that, in fact, if he rendered a guilty verdict, that that in and of itself would take care of the penalty.
>
> I think he should be told by somebody that, in fact, it's two different phases; that he can, in fact, return a guilty verdict if that's the appropriate verdict; and he will have the opportunity to voice his opinion. That may satisfy it.

Trial Transcript at 106.

3. During this portion of the voir dire the prosecutor stated:

> Not only for your benefit, ... but for the benefit of the rest of the prospective members of the jury, let me jump ahead a little bit and see if I can do some clarification. The law in the State of Florida provides that in a trial for a capital offense, such as murder in the first degree, we actually have two stages or two phases of the proceedings.
>
> The first phase relates to the guilt or the innocence of the Defendant. At that point, the State puts on its case in chief against the Defendant in an attempt to convince the jury that he is guilty of murdering Elisa Nelson, beyond and to the exclusion of every reasonable doubt. The jury, in Florida, has the opportunity to go back and to deliberate that issue. Obviously, if the jury finds him to be innocent, they come back and say so, and he walks out of the courtroom and that's the end of that.
>
> ....
>
> ... If, on the other hand, this jury ultimately at the conclusion of the State's case, convicts, walks back into the courtroom and says that he is guilty of murder in the first degree, there then begins a separate portion of the proceeding in front of the same jury panel with additional testimony and evidence being presented, at which time you again—these matters that were not brought to your attention in the prior portion of the trial. The jury then has the opportunity to go back and deliberate whether or not you will come back and make a recommendation of mercy to the Court.
>
> The recommendation that you make to Judge Federico in this portion of the trial is simply a recommendation, and he is not bound by it. He may impose whatever sentence the law permits. He will have been here and will have listened to all of the testimony himself.

Trial Transcript at 106–108.

4. During voir dire the following occurred:

> [DEFENSE COUNSEL]: Only guilty of murder one requires a death penalty. And there are only two alternatives the Court has: One is death in the electric chair; the other is life with a minimum mandatory twenty-five years before the person becomes eligible for parole. I think a lot of people get the idea that if somebody gets a life sentence, they get out in seven years.
>
> That isn't the case in a first degree murder. It does carry a maximum of life, a minimum mandatory of twenty-five years before a person becomes eligible. That is the alternative the judge has, one of those two.
>
> [JUROR]: Is that the judge's discretion, or is that by law?
>
> [DEFENSE COUNSEL]: *By law, the judge only has two choices if you return a verdict of murder in the first degree.* Like [the prosecutor] said, you go back and render an *advisory opinion* as to what you people believe is the appropriate sentence, whether you believe that the appropriate sentence is death or whether you believe the appropriate sentence is life with a minimum mandatory twenty-five years.
>
> Now, he just doesn't disregard that and do whatever he wants to. *He is, by law, required to give your recommendation great weight, but he is also permitted to overrule your recommendation if he desires to do so and he feels under the law he should.* But he can still only do one of those two things. The law does not give him any other discretion.
>
> He has to, ultimately, if Mr. Mann is convicted of murder in the first degree, say, I sentence you to death, life, or the minimum mandatory of twenty-five years. That's the *only two options he has.* Okay? Does that clear that up? Does everybody understand that?

A thorough review of the trial transcript reveals that defense counsel and the prosecutor placed equal emphasis on the advisory role of the jury.[5] In addition, both lawyers indicated to the jurors that if they found the defendant guilty of first degree murder, the judge would ultimately determine the appropriate penalty.[6]

Defense counsel's numerous comments regarding the jury's advisory role indicate that he agreed with the explanations given by the prosecutor and the trial judge. This strengthens my conviction that the prosecutor accurately stated the Florida law and did not mislead the jury. Therefore, I am unable to find that the prosecutor's statements created a *Caldwell* violation.

> (THEREUPON, the prospective jurors indicated affirmatively.)
> Trial Transcript at 163–64 (emphasis added).

5. The prosecutor used the words "advisory" or "recommendation" (or derivatives thereof) during two phases of the trial. These included comments made during voir dire, *see* Trial Transcript at 108, 109, 110, 211, 283, 285, and during the closing argument of the sentencing phase. *See* Trial Transcript at 1319, 1326, 1327.

   By comparison, the defense counsel used these terms just as often. These included comments made during voir dire, *see* Trial Transcript at 163–64 (for text of this comment see *supra* note 4), 171, 173, 272, 273, 274, and during closing argument of the sentencing phase. *See* Trial Transcript at 1331, 1338, 1341, 1342.

6. As the majority notes, the prosecutor made three references to the judge as the final decision maker. These include comments twice made during voir dire, *see* Trial Transcript at 110–111, 285, and once during the closing argument of the sentencing phase. *See* Trial Transcript at 1330.

   The defense counsel, however, also indicated that the judge had the burden of choosing between a death and a life sentence. *See* Trial Transcript at 164–165 (for text of this comment, see *supra* note 4). During his final argument of the sentencing phase, defense counsel again spoke of the judge's responsibility as sentencer:
   > To begin at the very beginning, the issue here is whether this man lives, by my computation, to the age of eighty-five in prison before he can be eligible for parole or whether he dies. This judge can sentence this man, in addition to the twenty-five years minimum mandatory, he can sentence him in addition to that ninety-nine years on the kidnapping and retain jurisdiction over him for thirty-three of those years to prevent his release or his consideration for release, as I understand it, to approximately the year 2039. So, the issue that you

Because I believe that the prosecutor did not mislead the jury, I do not find it necessary to determine whether the trial judge's comments were sufficiently curative. I note, however, that the trial judge's statements were not misleading. The judge explained to the jury its role in the Florida sentencing scheme.

The trial judge essentially repeated the explanations given by the lawyers. He told the jury that its determination of the appropriate penalty would serve as a recommendation.[7] The judge also stated that although the final determination of the appropriate penalty rested with the court, the jury had a duty to recommend the appropriate penalty in this case.[8] One of the trial

> are here to determine is not whether he lives among us. The issue is whether he lives. Trial Transcript at 1331.

7. The trial judge made several references to the advisory nature of the jury's sentence. These comments occurred during post verdict instructions, *see* Trial Transcript at 1236, during the initial instructions of the sentencing phase, *see* Trial Transcript at 1252–1253, and during the final instructions of the sentencing phase. *See* Trial Transcript at 1344–1351.

8. During the initial instructions of the sentencing phase the trial judge stated:
   > Members of the jury, you have found the Defendant guilty of murder in the first degree. The punishment for this crime is either death or life imprisonment. The final decision as to what punishment shall be imposed rests solely with the judge of this court. However, the law requires that you, the jury, render to the Court an advisory sentence as to what punishment should be imposed upon the Defendant.
   > Trial Transcript at 1252.
   > During the final instructions to the jury in the sentencing phase, the judge stated:
   > Ladies and gentlemen of the jury, it is now your duty to advise the Court as to what punishment should be imposed on the Defendant for his crime of murder in the first degree. As you have been told, the final decision as to what punishment shall be imposed is the responsibility of the judge. However, it is your duty to follow the law which will now be given to you by the Court and render to the Court an advisory opinion based upon your determination as to whether sufficient aggravating circumstances exist to justify the imposition of the death penalty, whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist. Your verdict should be based upon the evi-

judge's last comments before the jury retired reinforced the importance of the jury's task:

> The fact that the determination of whether or not a majority of you recommend a sentence of death or sentence of life imprisonment in this case can be reached by a single ballot should not influence you to act hastily or without due regard to the gravity of these proceedings. Before you ballot, you should carefully weigh, sift and consider the evidence, and all of it, *realizing that a human life is at stake,* and bring to bear your best judgment upon the sole issue which is submitted to you at this time, of whether a majority of your number recommend that the Defendant be sentenced to death or to life imprisonment.

Trial Transcript at 1348–1349 (emphasis added). Such a closing instruction had to impress upon the jury the importance of their role in the sentencing process.

One other aspect of cases of this sort troubles me. Jurors are a cross section of our communities. They are our average citizens with differing degrees of education, sophistication, experiences and views of government. My experience with juries convinces me that they approach such service with great dedication and awareness. In cases involving a question of whether or not the death penalty should be imposed, great concern and seriousness of purpose literally permeates the courtroom. Jurors, like judges, lose sleep and are totally preoccupied with doing what is right and correct under the law. We, as judges, should be slow to assume that such men and women have somehow been derailed or led astray.

Finding nothing in this record, when considering such in its entirety, that would mislead or tend to diminish the responsibility of the jury, I would deny relief.

dence which you have heard while trying the guilt or innocence of the Defendant, and evidence which has been presented to you in this proceeding.

Trial Transcript at 1344–44 (There are two consecutive pages in the trial transcript numbered as 1344.).